**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| LEON GREEN and WALDO TEJADA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>XPO LAST MILE, INC.,<br><br>Defendant. | Civil Action No. |

**CLASS ACTION COMPLAINT**

## I. INTRODUCTION

1. This is an action brought on behalf of current and former Connecticut delivery drivers of Defendant XPO Last Mile, Inc. ("XPO"), who were deprived of wages due to them under the Connecticut wage payment laws in violation of Conn. Gen. Stat. § 31-71e. The above-named Plaintiffs brings this action on behalf of himself and on behalf of a class of similarly situated persons who have worked as delivery drivers for XPO in Connecticut and who were classified as independent contractors for statutory claims that stem from the same wage payment law violations.

## II. THE PARTIES

2. Plaintiff Leon Green is an adult resident of Windsor, Connecticut. From approximately 2008 to the present, Green has worked for XPO in Connecticut as a delivery driver delivering Lowe's and Sears' merchandise. Green performed deliveries out of several Lowe's stores in Connecticut and out of a Sears facility in Newington, Connecticut.

1

3. Plaintiff Waldo Tejada is an adult resident of Miami, Florida. From approximately January 2015 to June 2018, Tejada worked for XPO in Connecticut as a delivery driver delivering primarily Lowe's merchandise.

4. The above-named Plaintiffs brings this action on behalf of a class of similarly-situated individuals, namely, all other persons who have executed contract carrier agreements (either personally or on behalf of corporate entities) and who personally provided delivery services for XPO in Connecticut.

5. Defendant XPO is a foreign corporation incorporated under the laws of the Georgia, with its headquarters in Marietta, Georgia. XPO does business in Connecticut, performs deliveries in Connecticut, and operates delivery facilities in Connecticut.

**III. JURISDICTION**

6. This court has jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1332(d)(2)(A), the Class Action Fairness Act ("CAFA").

7. There are at least 100 members of the proposed class.

8. This is a class action under Rule 23 of the Federal Rules of Civil Procedure.

9. The parties are diverse and the aggregate amount in controversy exceeds $5,000,000, inclusive of damages, statutory penalty damages, attorneys' fees, pursuant to Conn. Gen. Stat. Section 31-68.

10. At least one member of the proposed class is a citizen of a state different from that of at least one defendant.

11. Plaintiffs' claims involve matters of national or interstate interest.

12. Venue is proper in this district under 28 U.S.C. § 1391(b)-(c) because the acts or omissions giving rise to claims in this Complaint took place in this judicial district.

13. This court has personal jurisdiction over Defendant pursuant to Connecticut's long-arm statute because it transacts business in the State of Connecticut, it enters into contracts with the class members, including Plaintiffs, and its conduct in violating the Connecticut wage payment law and Connecticut's common law is tortious as that term is defined under the long arm statute.

### III. STATEMENT OF FACTS

14. XPO is in the business of providing delivery services for companies such as Home Depot, Sears, Bob's Discount Furniture, Lowe's, Ikea, and Amazon. To carry out this central function, XPO purports to contract with individuals such as Plaintiffs, to drive a delivery truck and to deliver retail merchandise to customers' homes

15. In order to do this work, XPO requires Plaintiffs, as well as the other members of the class, to sign an agreement which states that its drivers are independent contractors.

16. Although XPO classifies Plaintiffs, as well as other class plaintiffs, as independent contractors, the control manifested over the drivers by XPO as well as the drivers' inability to maintain an independently established business demonstrates that they qualify as XPO's employees under the Connecticut wage payment law. The following facts support this claim:

    a. Plaintiffs, as well as the other drivers, is required to report to specified locations, such as Lowe's stores whose loading docks were maintained or controlled by XPO, at specified times, at which time they would be provided with a list of deliveries to make.

    b. Plaintiffs, as well as the other drivers, were and/or are instructed to load the goods to be delivered onto their trucks in a specific order.

c. Plaintiffs, as well as the other drivers, were and/or are instructed to make all deliveries within two or four-hour time windows.

d. The manifests received by Plaintiffs, as well as the other drivers, instructed and/or instruct them as to whom deliveries must be made to, the order in which deliveries are to be made, and locations where deliveries to be made. Sometimes, during the day, additional deliveries that were not originally scheduled for the day are added to Plaintiffs and other drivers' routes and they are not allowed to postpone those deliveries for another day or to turn them down.

e. Plaintiffs, as well as the other drivers, were and/or are required to wear uniforms when making deliveries for XPO. Uniforms included a badge that identified the drivers as XPO drivers or helpers as well as shirts that said "XPO Last Mile," as well as a jacket and black or navy pants, with black shoes.

f. Plaintiffs, as well as the other drivers, could be suspended if they were caught working without an XPO uniform on. XPO instructed the Plaintiffs and the other class members to take photos of themselves and helpers in their uniforms in the morning and send the photos into XPO.

g. Plaintiffs, as well as the other drivers, were and/or are required to carry a cell phone so that they may receive calls or texts from XPO. XPO contacts Plaintiffs during the day with instructions related to cancellations and rescheduling of deliveries.

      h.      Plaintiffs and other drivers also had to download an XPO application (now called "Deliver by XPO Logistics") onto their phones to login when they arrive at the store each morning and to log the beginning and end of each delivery, to view directions to customers' homes, directions to the customers' homes, and which notifies the driver when they are running late for a delivery. The drivers are required to scan each delivery using the phone application.

      i.      Plaintiffs, as well as the other drivers, were and/or are required to be in contact with XPO dispatchers regarding the status of deliveries.

      j.      Plaintiffs, as well as other drivers, would leave and/or leave their trucks at the XPO facility or at Lowe's when not making deliveries.

      k.      XPO would suspend Plaintiffs, as well as other drivers, when they were the subject of a customer complaint.

      l.      Plaintiffs, as well as the other drivers, were and/or are required to get signatures from customers when deliveries are made.

      m.      XPO may prohibited Plaintiffs and the other class members from using certain helpers they want to use to perform deliveries because of customer complaints or because they failed a background check.

17.    XPO requires delivery drivers with which it contracts to have or lease a truck that meets specifications determined by XPO.

18.    XPO keeps track of Plaintiffs' performance, as well as the performance of its other delivery drivers, through customer ratings. XPO posts the drivers' customer scores. XPO

could suspend a driver if they had low customer ratings. Drivers are paid extra if their scores were above a level set by XPO.

19. If a customer complains about a delivery, XPO will send a giftcard of between $50 to $150 to the customer and deduct that amount from the pay of Plaintiffs and the other class members.

20. XPO also requires delivery drivers with which it contracts to obtain insurance, including automobile liability, commercial general liability, umbrella liability, cargo, and worker's compensation coverage, at levels dictated by XPO.

21. XPO retained the right to terminate the contract with Plaintiffs, as well as the other class members, without cause.

22. Plaintiffs, as well as the other class plaintiffs, performed and/or perform work which is integral to the business of XPO – i.e., they perform delivery services and XPO is engaged in the business of providing delivery services to its customers.

23. Plaintiffs, as well as the other class plaintiffs, do not have an independently established trade or business in that they are dependent upon XPO for their work, they do not negotiate with XPO customers regarding the rates charged for their services, and they are not permitted to contact XPO customers independent of XPO.

24. Plaintiffs, as well as other class plaintiffs, are not permitted to subcontract or assign their rights under their agreement with XPO to another delivery driver.

25. XPO deducts certain expenses directly from the compensation it pays, including certain expenses directly from the compensation it pays, including deductions for insurances (including auto liability, cargo, general liability, umbrella and workers' compensation insurance), gift cards, administrative costs such as processing fees, uniforms, and compels Plaintiffs and

other drivers to incur certain expenses which would normally be borne by an employer, such as for fuel costs, vehicle maintenance costs, and payments to helpers.

26. When XPO determines, in its sole discretion, that a delivery has been made in a manner it deems to be unsatisfactory (e.g., damaged goods, damage to customer property), XPO will deduct the costs of such damage from pay checks. Plaintiffs as well as the other drivers could not and/or cannot appeal such deductions.

## CLASS ALLEGATIONS

27. Plaintiffs bring this action individually and on behalf of a class of similarly situated individuals. The class of individuals similarly situated are all individuals like the Plaintiffs who have performed or currently perform delivery services for XPO as full time delivery drivers within the State of Connecticut and who have been classified as an "independent contractor" rather than an employee.

28. The Class meets all the prerequisites of Rule 23 of the Federal Rules of Civil Procedure.

29. At least 40 drivers have performed delivery services for XPO in Connecticut during the applicable statutory period.

30. The Plaintiffs' claims related to their misclassification are not only typical of the claims of putative class members, they are virtually identical.

31. Common issues, such as whether XPO's policy of classifying drivers as independent contractors rather than employees, predominate over any individualized issues.

32. Plaintiffs and their counsel, who have been class counsel in many similar cases, will adequately represent the putative class, and a class action is the superior method of trying these claims.

## COUNT I
## ILLEGAL WITHHOLDING OF WAGES

33. Although Plaintiffs and other drivers were designated as independent contractors by Defendant, in fact they were employees for the reasons stated above and were protected by Connecticut's wage payment laws, C.G.S. Section 31-58 et seq.

34. Defendant's practice of making various unlawful and unauthorized deductions from the Plaintiffs' and other drivers' compensation violates Conn. Gen. Stat. § 31-71e.

35. This claim is brought pursuant to Conn. Gen. Stat. § 31-72 which entitles Plaintiffs and the other class members to twice the full amount of such wages withheld with costs and reasonable attorneys' fees.

## COUNT II
## UNJUST ENRICHMENT

36. As set forth above, by misclassifying Plaintiffs and other delivery drivers as independent contractors when they are employees under Connecticut law, Defendant was unjustly enriched or was conferred a benefit because they unlawfully shifted their business costs and expenses to the Plaintiffs and class members, including without limitations employer payroll taxes, administrative fees, fuel and vehicle maintenance costs, to the detriment of Plaintiffs and class members. Defendant was aware that it received a benefit as a result of the misclassification, and it would be unjust to let Defendant keep the benefit of its savings in business costs and expenses.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of himself and those similarly situated, seeks the following relief:

a. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

b. Designation of Plaintiffs as representatives of the Rule 23 Class, and counsel of record as Class Counsel;

c. Pre-judgment interest and post-judgment interest as provided by law;

d. Appropriate equitable and injunctive relief to remedy violations, including but not necessarily limited to an order enjoining Defendant from continuing their unlawful practices;

e. Attorneys' fees and costs of the action under either Conn. Gen. Stat. § 31-72 and/or Public Act 15-86;

f. Statutory damages pursuant to Conn. Gen. Stat. § 31-72 and/or Public Act 15-86;

j. Such other relief as this Court shall deem just and proper.

WHEREFORE, the Plaintiffs respectfully request that this Court grant him appropriate compensatory relief, attorneys' fees, interests and costs to certify this action to proceed as a class action under Rule 23.

9

DATED:  November 27, 2019                    Respectfully Submitted,
                                             LEON GREEN and WALDO TEJADA,
                                             individually and on behalf of all others similarly
                                             situated,

                                             By their attorneys,


                                             */s/ Zachary L. Rubin*
                                             Zachary L. Rubin (ct30192)
                                             Harold L. Lichten (*pro hac vice* anticipated)
                                             Benjamin J. Weber (*pro hac vice* anticipated)
                                             LICHTEN & LISS-RIORDAN, P.C.
                                             729 Boylston Street, Suite 2000
                                             Boston, MA 02116
                                             (617) 994 5800
                                             zrubin@llrlaw.com
                                             hlichten@llrlaw.com
                                             bjweber@llrlaw.com