UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LEON GREEN and WALDO TEJADA, individually and on behalf of all others similarly situated, *Plaintiffs*, <br><br> v. <br><br> XPO LAST MILE, INC., *Defendant*. | No. 3:19-cv-01896 (JAM) |

ORDER DENYING MOTION TO CERTIFY
INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)

The plaintiffs are truck drivers who have filed this lawsuit against defendant XPO Last Mile, Inc. ("XPO"), alleging that XPO has failed to treat them as employees—rather than as independent contractors—under Connecticut's wage law.

XPO filed a motion to compel individual arbitration of the plaintiffs' claims, and I denied the motion. *See Green v. XPO Last Mile, Inc.*, -- F. Supp. 3d --, 2020 WL 7021704 (D. Conn. 2020). XPO's motion relied on arbitration provisions that were set forth in Delivery Service Agreements between XPO and certain limited liability companies owned by the plaintiffs. *Id.* at *2-3. The plaintiffs were not personally parties to these agreement but signed them in their representative capacity as owners of the limited liability companies. *Ibid.*

I noted at the outset of my ruling that the enforceability of the arbitration provision was governed by Connecticut law. *Id.* at *3. Next I concluded that the plaintiffs were not personally parties to the arbitration agreement. *Id.* at *5. Then I explained why the plaintiffs were not bound by any principle of estoppel to engage in arbitration. *Id.* at *6-9.

XPO now moves to certify my ruling for interlocutory appeal and for a stay pending appeal. Doc. #42. Federal law allows a district judge to certify for appeal an otherwise non-

1

appealable interlocutory ruling if the ruling "[1] involves a controlling question of law as to which [2] there is substantial ground for difference of opinion" and "[3] an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b) (internal brackets added). This certification provision "is a rare exception to the final judgment rule that generally prohibits piecemeal appeals," *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996), and certification is appropriate "only when [the] three enumerated factors suggesting importance are all present," *Bullard v. Blue Hills Bank*, 575 U.S. 496, 508 (2015).

According to XPO, "[t]he issue that [it] seeks leave to appeal is narrow: whether Plaintiffs are compelled to arbitrate under a theory of direct benefits estoppel." Doc. #42-1 at 6. It argues that "the Second Circuit has not decided whether the benefits that inure to a closely held entity also accrue to the direct benefit of the entity's owners, whereas the Seventh and Fifth Circuits have decided that such benefits are direct." *Ibid*. XPO relies on two cases—*Everett v. Paul Davis Restoration, Inc.*, 771 F.3d 380 (7th Cir. 2014), and *Blaustein v. Huete*, 449 F. App'x 347 (5th Cir. 2011) (*per curiam*). I will consider each case in turn.

In *Everett*, the Seventh Circuit considered a franchise business that was owned, controlled, and operated by the plaintiff and her husband. *See* 771 F.3d at 382. The plaintiff's husband formed the business and executed a franchise agreement with the defendant as both the franchisee company and individually in his own capacity as the 100% principal owner. *Ibid*. Although the evidence demonstrated that the plaintiff actually had a 50% ownership of the business and "[t]he terms of the franchise agreement also clearly required that Ms. Everett sign the franchise agreement in her personal capacity as an additional principal owner," the plaintiff never signed the franchise agreement. *Ibid*.

2

After the defendant terminated the franchise agreement, the plaintiff's husband transferred his stake in the business to the plaintiff and another employee, resulting in the plaintiff holding a total of 95% ownership of the business. *Ibid.* The plaintiff continued to operate the business under a new name, violating a non-compete clause in the franchise agreement, and the defendant initiated arbitration. *Id.* at 382-83. The plaintiff argued that she was not bound to arbitrate because she did not personally sign the franchise agreement containing the arbitration clause, but the arbitration panel ultimately entered an award against the plaintiff. *Id.* at 383. After the defendant requested confirmation of the arbitration award in the district court, the plaintiff moved to vacate the award. *Ibid.* The district court held that the plaintiff did not directly benefit from the franchise and that she therefore was not bound by the arbitration clause. *Ibid.*

The Seventh Circuit reversed. The district court had determined that as the "spouse and co-owner [the plaintiff] had a right to share the profits of the franchise, but that the benefits were indirect since they derived through her husband and the corporation." *Id.* at 384. The Seventh Circuit disagreed, finding this "to be too narrow an interpretation of direct benefits estoppel." *Ibid.* The court focused on the benefits of the franchise agreement and found that the plaintiff was not only "exploiting the contractual relationship among [the business], [her husband], and [the defendant], but rather the benefit of the contract itself—namely owning and operating a [] franchise," meaning that the plaintiff "received the same benefits as her husband" from the franchise agreement. *Ibid.*

The court also took note that the plaintiff and her husband "colluded to avoid the franchise agreement in order to leave [the plaintiff] free from the contractual obligations contained in it" while allowing the plaintiff to "receiv[e] precisely the same key benefits" as her husband who had signed the agreement in his personal capacity. *Id.* at 384-85. The court

3

concluded that the plaintiff's ownership interest was a direct benefit of the agreement, "not a separate relationship that the benefits of the agreement flowed through." *Id.* at 385.

In *Blaustein*, the Fifth Circuit considered a patent dispute between three inventors who formed a limited liability company to market their invention and hired a law firm to draft a patent application. 449 F. App'x at 348. The fee agreement between the limited liability company and the law firm had an arbitration clause. *Ibid.* Huete, one of the three inventors, sued the other inventors and added claims against the law firm on a number of grounds. The district court ultimately found that Huete was a party to the fee agreement and was therefore bound to arbitrate his claims against the law firm. *Id.* at 349. The Fifth Circuit reversed and remanded, and while finding that Huete was not personally bound by the agreement, the court did not foreclose the "possibility that Huete can be held to the arbitration agreement as a non-party beneficiary." *Ibid.* On remand, the law firm filed another motion to dismiss, which the district court granted, finding that "Huete knowingly sought and obtained direct benefits from the fee agreement and asserted claims stemming from that agreement." *Ibid.* Huete appealed the decision.

Relying on circuit precedent, the Fifth Circuit found that Huete "'embraced' the fee agreement" because he "obtained the same sort of benefits from the fee agreement that a client would have received: research, reasoning, drafting, and filing, all informed by the [law firm]'s legal training," and that he received these benefits as a member of the limited liability company because he had formed the limited liability company for that purpose. *Id.* at 350. The court concluded that the district court did not abuse its discretion in applying direct benefits estoppel to compel arbitration for Huete's claims. *Id.* at 350-51.

The decisions in *Everett* and *Blaustein* are factbound applications of the doctrine of direct benefits estoppel. They do not purport to interpret Connecticut law. Nor do they purport to state a

4

categorical rule—as XPO claims—that "benefits from an agreement between a closely held entity and a third-party flow directly to the entity owner, and that such benefits are not, as a matter of law, indirect to the entity owner." Doc. #42-1 at 14.

The decisions in *Everett* and *Blaustein* are not "directly on point" as XPO claims. *Ibid*. The decision in *Everett* was largely driven by the fact that the plaintiff colluded with her husband to avoid signing the agreement to arbitrate in her personal capacity as she was required to do. There was no such collusion here or any requirement that the plaintiffs sign the agreements in their personal capacities. The decision in *Blaustein* involved no more than an appellate determination that a district court did not abuse its discretion when deciding that a plaintiff was subject to direct benefits estoppel.

Moreover, the Seventh Circuit in *Everett* relied on Second Circuit precedent to conclude that, in order for direct benefits estoppel to apply, "the benefit received by the non-signatory must flow directly from the agreement," and "a benefit derived from the exploitation of the contractual relationship of parties to an agreement, but not the agreement itself is indirect." 771 F.3d at 383-84 (citing *MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 61 (2d Cir. 2001)). This was the same precedent and principle that I cited and applied in my prior ruling. *See Green*, 2020 WL 7021704, at *8 (citing and quoting from *MAG Portfolio*, 268 F.3d at 61).

XPO has not demonstrated that there is a controlling question of law at issue as to which there is a substantial ground for a difference of opinion. All it has shown is a disagreement about a factbound application of the direct benefits estoppel doctrine.

I note as well that XPO's motion to compel arbitration did not cite or discuss the *Everett* and *Blaustein* decisions. Nor did XPO file a motion for reconsideration on the ground that my

decision was inconsistent with the *Everett* and *Blaustein* decisions. Only now while in pursuit of an interlocutory appeal has XPO decided to cite and rely on the *Everett* and *Blaustein* decisions.

## CONCLUSION

Because XPO has not shown that there is a controlling question of law at issue as to which there is a substantial ground for a difference of opinion, the motion to certify the Court's ruling for interlocutory appeal and to stay this case pending appeal (Doc. #42) is DENIED.[1]

It is so ordered.

Dated at New Haven this 12th day of April 2021.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

---

[1] XPO states that if the Court does not grant its motion, then it seeks limited discovery to show that the plaintiffs directly benefited from the agreements. The Court has not stayed discovery. If the parties have a discovery dispute, then they may contact chambers in accordance with the Court's Instructions for Discovery Disputes that is available on the Court's webpage.